# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CELLULAR CUSTOMER DATA SECURITY BREACH LITIGATION | **MDL DOCKET NO. 3124** |

## SNOWFLAKE'S RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER AND COORDINATION PURSUANT TO 28 U.S.C. § 1407

1　　SNOWFLAKE'S OPPOSITION IN RESPONSE
　　　TO MOTION FOR TRANSFER

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1
BACKGROUND ............................................................................................................................4
  A. Snowflake Provides the AI Data Cloud—a Self-Managed Service that Customers Use and Control as Part of their Unique Data-Management Strategy ................................................................................................................4
  B. Threat Actors Gain Unauthorized Access to Certain Customers' Accounts Not by Breaching Snowflake's Security But by Stealing Valid Customer Log-In Credentials .........................................................................................5
  C. Filed Cases and Ongoing Coordination Efforts ........................................................6
I. MOVANTS HAVE FAILED TO MEET THEIR BURDEN TO SHOW CENTRALIZATION IS NECESSARY OR DESIRABLE ...............................................8
  A. The Minimal Overlap in Factual Issues Between Cases Counsels Against Centralizing Claims Against Snowflake in an AT&T-Centered MDL ...................9
  B. The Requested Centralization Would Inconvenience the Parties and Witnesses ...............................................................................................................10
  C. Creating an AT&T MDL that Includes Some But Not All Claims Against Snowflake Would be Extraordinarily Inefficient...................................................12
II. IF THE PANEL CREATES AN AT&T MDL, IT SHOULD SEVER THE CLAIMS AGAINST SNOWFLAKE AND TRANSFER THEM TO THE DISTRICT OF MONTANA ...............................................................................................13
CONCLUSION ..............................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Accellion, Inc., Customer Data Sec. Breach Litig.*,
   543 F. Supp. 3d 1372 (J.P.M.L. 2021)..................................................................8

*In re Alteryx, Inc., Customer Data Sec. Breach Litig.*,
   291 F. Supp. 3d 1377 (J.P.M.L. 2018)................................................................11

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litigation*,
   804 F. Supp. 2d 1376 (J.P.M.L. 2011)..................................................................8

*In re Comcast Corp.*,
   190 F. Supp. 3d 1344 (J.P.M.L. 2016)................................................................10

*In re Energy Drilling, LLC Litig.*,
   140 F. Supp. 3d 1333 (J.P.M.L. 2015)..................................................................9

*In re Invokana (Canagliflozin) Prods. Liab. Litig.*,
   223 F. Supp. 3d 1345 (J.P.M.L. 2016)................................................................13

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*,
   38 F. Supp. 3d 1380 (J.P.M.L. 2014)..................................................................11

*In re Varsity Athlete Abuse Litig.*,
   677 F. Supp. 3d 1376 (J.P.M.L. 2023)................................................................12

**Statutes**

28 U.S.C. § 1404........................................................................................................10, 11

28 U.S.C. § 1407................................................................................................... *passim*

Defendant Snowflake, Inc. ("Snowflake") respectfully submits this response in partial opposition to Lori Young and Machelle Crawford's Motion for Transfer of Actions to the Northern District of Georgia Pursuant to 28 USC § 1407 for Consolidated or Coordinated Pretrial Proceedings.

**PRELIMINARY STATEMENT**

Pending before the Panel are two competing motions to transfer (each a "Motion," together the "Motions") that arise out of a series of separate incidents whereby threat actors gained unauthorized access to certain of Snowflake customers' accounts.[1] The instant Motion seeks to centralize all cases in which a single Snowflake customer, AT&T, is a defendant. Notably, however, it purports to include cases where Snowflake and AT&T are co-defendants but excludes cases against Snowflake alone and cases in which Snowflake has been sued along with a different customer. As currently requested, the instant Motion would create chaos and impede more efficient approaches that Snowflake and other parties currently are pursuing. It should be denied, at least in part.

Snowflake takes no position on the instant Motion's main argument—that the Panel should form an AT&T-only MDL in the Northern District of Georgia. That would be consistent with efforts already underway to consolidate cases in defendant-specific proceedings.[2] If the Panel is

---

[1] The competing Motion (MDL No. 3126) also pending before this Panel seeks to centralize *all* cases arising from these separate instances of unauthorized access into Snowflake customers' accounts. *See In Re Snowflake Data Breach Litig.*, MDL No. 3126 (Dkt. No. 1) (J.P.M.L. 2024). The Panel should deny that Motion for the reasons set forth in Snowflake's forthcoming opposition to that Motion.

[2] In addition to cases against Snowflake, which are largely filed and related before Chief Judge Morris in the District of Montana, the bulk of the cases against the other defendants are also on their way to being consolidated. The claims against Ticketmaster have largely been filed in the Central District of California, where a motion for consolidation is pending. *See Ryan, et al. v. Ticketmaster, LLC, et al.*, Case No. 2:24-cv-04482-SPG-MAA (C.D. Cal. 2024) (Dkt. No. 32).

inclined to form such an MDL, Snowflake respectfully asks that the Panel sever the few claims against Snowflake that would be swept into this MDL (*i.e.*, the cases in which Snowflake is named as co-defendant with AT&T) and transfer them to the District of Montana, where most of the cases against Snowflake are pending and have been deemed related by Chief Judge Morris.

There is good reason for Snowflake's proposed approach. The cases the instant Motion seeks to centralize concern the alleged unauthorized access by threat actors into AT&T's Snowflake account. AT&T is one of the world's largest and most sophisticated companies, with unique and varying data security needs and processes across its large organization. It therefore agreed with Snowflake on a "shared responsibility" cyber-security model, whereby responsibility for data security is divided between Snowflake—which secures its platform—and the customer (here, AT&T)—which is responsible for securing access to its Snowflake account and various access points, including through the use of security tools such as multi-factor authentication ("MFA"), allowlisting, and password rotation. The cases against AT&T will necessarily focus on the particular data that AT&T managed using Snowflake software and the particular steps that AT&T took—or decided were unnecessary—to secure that data. The cases against AT&T will also necessarily involve myriad individualized questions around liability and damages that do not implicate Snowflake, including how customer credentials came to be in possession of the threat actor, the type of data accessed, and any other third-party security tools the customer had in place.

---

The claims against Advance Auto Parts have been consolidated in the Eastern District of North Carolina. *See In Re Advance Stores Co., Inc., Data Breach Litig.*, No. 5:24-CV-00352-M (E.D.N.C. 2024) (Dkt. No. 24 Order Granting Motion to Consolidate). The first and only case against Neiman Marcus was filed on August 1, 2024, in the Southern District of Florida, and the first and only case against LendingTree was filed on August 15, 2024 in the District of Montana.

The claims against Snowflake are of a different nature entirely and should not be swept into an AT&T-centric MDL. It is a matter of public record that Snowflake made MFA and other security tools available to its customers and recommended that they use them. The customers could also use third-party tools to secure their Snowflake accounts. The plaintiffs suing Snowflake customers generally allege that threat actors were able to access the customers' accounts because the customers failed to implement one or more of these available security tools. *See, e.g.*, *Young v. AT&T*, No. 24-cv-3185, (N.D. Ga. 2024) (Dkt. No. 1, ¶ 7) (alleging AT&T was negligent because "multi-factor authentication was not required to access the sensitive customer records"). By contrast, the plaintiffs suing Snowflake generally allege that Snowflake should have done more to *ensure* that its customers were adequately securing their accounts (for example, by *mandating* use of MFA), rather than permitting customers to operate under a shared security model where they can make their own choices driven by their unique business needs. *See, e.g.*, *Leal v. Snowflake*, No. 24-cv-00046-BMM, (D. Mont. 2024) (Dkt. No. 3) (alleging "Snowflake could have easily prevented the Data Breach by *requiring* all users to use multi-factor authentication") (emphasis added). Even if there were merit to the theory asserted against Snowflake, it is discrete and distinct from the issues that will pervade the cases against the customers, including AT&T—*i.e.*, whether the particular steps the customers took to prevent unauthorized access to their respective accounts were appropriate in light the particular type of data the customer chose to store therein. The relevant facts and disputed issues in the customer cases will therefore be specific to each customer. Snowflake's liability, if any, rests on entirely different legal theories and factual bases, and must be litigated separately.

3    SNOWFLAKE'S OPPOSITION IN RESPONSE
TO MOTION FOR TRANSFER

For these reasons, Movants' request for an MDL that includes all AT&T cases—including any cases against AT&T in which Snowflake is named as a co-defendant—should be denied.[3] If the Panel decides to grant the instant Motion's request to centralize the cases against AT&T, then Snowflake respectfully asks that the Panel sever the claims against Snowflake and transfer them to the District of Montana, where the bulk of the cases against Snowflake are already pending and related before Chief Judge Morris, where the parties intend to move to consolidate all such cases, and where Snowflake intends to transfer the few Snowflake cases filed outside of Montana.

## BACKGROUND

**A.     Snowflake Provides the AI Data Cloud—a Self-Managed Service that Customers Use and Control as Part of their Unique Data-Management Strategy**

Snowflake provides customers with the AI Data Cloud—software for warehousing, managing, and sorting data.[4] The AI Data Cloud is a self-managed service, meaning that each of Snowflake's customers controls and manages its own data account.[5] The data that customers upload to the Snowflake platform for processing is encrypted.[6] As a result, Snowflake has limited visibility into the contents or movement of customer data, activity within customers' Snowflake accounts, and their security configurations. Most organizations use the AI Data Cloud as one part of their overall data strategy and in conjunction with many other types of software.

---

[3]  Snowflake attaches as Appendix A a list of all cases of which it is aware that name it as a defendant. The cases in which Snowflake and AT&T are named as co-defendants are highlighted in blue for the convenience of the Panel. Broome Decl. at ¶ 2.

[4]  *See Snowflake Documentation: Key Concepts,* https://docs.snowflake.com/en/user-guide/intro-key-concepts (last visited Aug. 13, 2024) ("Snowflake enables data storage, processing, and analytic solutions . . .").

[5]  *Id.*

[6]  *Snowflake Documentation: Managing Encryption,* https://docs.snowflake.com/en/user-guide/security-encryption-manage (last visited Aug. 13, 2024) ("All Snowflake customer data is encrypted by default using the latest security standards and best practices.").

Each organization's data strategy and risks are different. For this reason, Snowflake operates a "shared responsibility" cybersecurity model.[7] At a high level, Snowflake is responsible for ensuring the security of its platform and underlying infrastructure, while customers are responsible for selecting, enabling, and configuring access controls for their individual accounts.[8]

**B.     Threat Actors Gain Unauthorized Access to Certain Customers' Accounts Not by Breaching Snowflake's Security But by Stealing Valid Customer Log-In Credentials**

In April 2024, threat actors began gaining unauthorized access to certain of Snowflake's customers' Snowflake accounts. AT&T reported such an incident on July 12, 2024.[9] Multiple investigations, including by outside cybersecurity experts, have concluded that there is no evidence suggesting the unauthorized access was caused by a vulnerability, misconfiguration, or breach of Snowflake's AI Data Cloud.[10] Rather, it appears that the threat actors stole valid account credentials (from non-Snowflake devices) belonging to the customers' employees or contractors and used them to access the customers' respective accounts within the AI Data Cloud.[11] It appears that the threat actors obtained these valid credentials through "infostealer malware" infections of

---

[7]  *Snowflake Shared Responsibility Model Report,* https://www.snowflake.com/en/resources/report/snowflake-shared-responsibility-model/ (last visited Aug. 13, 2024).

[8]  *Id.*

[9]  Cybersecurity & Infrastructure Security Agency, AT&T Discloses Breach of Customer Data, CISA Alerts (July 12, 2024), https://www.cisa.gov/news-events/alerts/2024/07/12/att-discloses-breach-customer-data.

[10]  *See*, e.g., *UNC5537: Snowflake Data Theft and Extortion,* Google Cloud Blog (Aug. 8, 2023), https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion ("Mandiant's investigation has not found any evidence to suggest that unauthorized access to Snowflake customer accounts stemmed from a breach of Snowflake's enterprise environment.").

[11]  *Id.* ("every incident Mandiant responded to associated with this campaign was traced back to compromised customer credentials").

the customers' devices that dated as far back as 2020.[12] There is no evidence to suggest that these customers' credentials were stolen through Snowflake's system.[13] The only Snowflake customers allegedly affected appear to be those whose user credentials had been stolen *and* who did not have MFA or network-access policies enabled for their accounts.

Access to one customer account does not provide access to other customer accounts; the threat actor or actors required valid credentials for each customer's account to gain access to that customer's account and data. Thus, the circumstances under which threat actors accessed each customer's account necessarily vary by customer.

The data that threat actors allegedly exfiltrated also varies by customer. With respect to AT&T, the threat actors allegedly exfiltrated records of AT&T customer call and text interactions that occurred during a brief period in 2022 and a single day in 2023. The threat actors do not appear to have exfiltrated personally identifiable information, or offered the data for sale.[14]

### C. Filed Cases and Ongoing Coordination Efforts

Following these incidents, plaintiffs began filing suits against Snowflake and certain of its customers, including AT&T. To date, the only Snowflake customers sued are AT&T, Ticketmaster/Live Nation, Advance Auto Parts, Neiman Marcus, and LendingTree/QuoteWizard. Some cases are against only the customer, others are against only Snowflake, and yet others name

---

[12] *Id.*

[13] *Id.* ("These credentials were primarily obtained from multiple infostealer malware campaigns that infected non-Snowflake owned systems.").

[14] *AT&T Inc. SEC Filing,* https://otp.tools.investis.com/clients/us/atnt2/sec/sec-show.aspx?FilingId=17677638&Cik=0000732717&Type=PDF&hasPdf=1 (last visited Aug. 13, 2024).

Snowflake and one of its customers as co-defendants. No case filed to date names Snowflake and more than one customer as co-defendants.

The instant Motion seeks to centralize all cases against AT&T, including those AT&T cases (currently seven) that include Snowflake as a co-defendant. Although an AT&T-centric MDL is consistent with the efforts underway to consolidate single-defendant proceedings, it makes little sense for this putative AT&T-centric MDL to include claims against Snowflake. Such an MDL would also be at odds with the efforts by various parties to coordinate and consolidate the 19 cases against Snowflake in the District of Montana. Indeed, in recognition of the fact that the claims against Snowflake are differently-situated from the claims against AT&T, plaintiffs who originally named AT&T and Snowflake as co-defendants in one District of Montana complaint amended it to drop claims against AT&T in favor of re-filing them in a separate complaint in another jurisdiction so that their claims against Snowflake could proceed alone in Montana. *See Olivieri v. Snowflake*, No. 24-cv-00056-BMM (D. Mont. 2024) (Dkt. No. 21). Many of the parties before Chief Judge Morris—including Snowflake and several plaintiffs—intend to move to consolidate the cases presently before him. Broome Decl. at ¶ 4. Snowflake is also coordinating with plaintiffs' counsel in the non-Montana actions in an attempt to transfer those cases to the District of Montana and, if necessary, to sever the claims against Snowflake from claims against any other customer defendant. Broome Decl. at ¶¶ 5-7.

The cases against the other customers (not included in the schedule of cases Movant submitted) are also largely organized by defendant-entity:

- Advance Auto Parts: Most of the cases against Advance Auto Parts are pending in the Eastern District of North Carolina and have already been consolidated in that District. *See In re Advance Stores Co., Inc., Data Breach Litigation*, Case No. 5:24-cv-00352 (D.N.C. 2024), Dkt. Nos. 13, 20. With respect to cases against Advance Auto Parts pending in other Districts, we are informed that Advance Auto Parts intends to move to sever any

7  SNOWFLAKE'S OPPOSITION IN RESPONSE
TO MOTION FOR TRANSFER

claims against it from actions where Snowflake is named a co-defendant, and then to move to transfer the Advance Auto Parts claims to the Eastern District of North Carolina to be consolidated with the primary proceeding. Broome Decl. at ¶ 5.

- Ticketmaster/Live Nation: Most of the cases against Ticketmaster/Live Nation are pending in the Central District of California. The plaintiffs there have filed an unopposed motion to consolidate the cases in that District. *See Ryan, et al. v. Ticketmaster, LLC, et al.*, Case No. 2:24-cv-04482 (C.D. Cal. 2024), Dkt. Nos. 32, 36, 38.

- Neiman Marcus: Only one case, filed in the Southern District of Florida, names Neiman Marcus as a defendant; Snowflake is a co-defendant. *See Reichbart v. Neiman Marcus Group LLC and Snowflake, Inc.*, Case No. 24-cv-61389 (S.D. Fla. 2024); Snowflake has contacted plaintiff's counsel to discuss severing of claims against Neiman Marcus and transferring the claims against Snowflake to the District of Montana. Broome Decl. at ¶ 6.

- LendingTree: Only one case, filed in the District of Montana, names LendingTree as a defendant; Snowflake is a co-defendant. *See Nader v. Snowflake, Inc. and LendingTree, LLC*, Case No. 2:24-cv-00079 (D. Mon. 2024). Snowflake intends to discuss with plaintiff's counsel severing of claims against LendingTree. Broome Decl. at ¶ 7.

## **ARGUMENT**

### I. MOVANTS HAVE FAILED TO MEET THEIR BURDEN TO SHOW CENTRALIZATION IS NECESSARY OR DESIRABLE

To succeed in their bid to centralize the litigation pursuant to 28 U.S.C. § 1407, Movants must show: (1) common questions of fact among the cases; (2) consolidation serves the convenience of the parties and witnesses; and (3) transfer and consolidation serve the just and efficient conduct of the actions. 28 U.S.C. § 1407. Movants bear the burden of persuasion on all three factors. *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litigation*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011). Although Movants' request to consolidate all cases against AT&T is consistent with efforts underway to consolidate these cases in single-defendant-centric proceedings, their request to include in this AT&T-centric MDL the seven cases that name Snowflake as a co-defendant should be denied. Snowflake respectfully asks that if the Panel centralizes the litigations against AT&T, the claims against Snowflake in those litigations be severed and transferred to the District of Montana to proceed in front of Chief Judge Morris, where

the bulk of the actions against Snowflake are already pending, related, and likely to be consolidated.

A.  **The Minimal Overlap in Factual Issues Between Cases Counsels Against Centralizing Claims Against Snowflake in an AT&T-Centered MDL**

The Panel regularly denies centralization where cases present minimal overlap in factual or legal issues, or where the common inquiries are not complex. *See, e.g.*, *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021) (denying consolidation and transfer where "any factual overlap . . . may be eclipsed by factual issues specific to each client defendant"); *see also In re Energy Drilling, LLC Litig.*, 140 F. Supp. 3d 1333, 1334 (J.P.M.L. 2015) (denying consolidation because of "limited factual overlap").

There are few, if any, common questions of fact between the cases against Snowflake and the cases against AT&T. The claims against AT&T will revolve around highly individualized factual and legal issues, including: (1) AT&T's representations, commitments and obligations to its customers, (2) the type of AT&T customer data allegedly exfiltrated, (3) the method by which AT&T's credentials were stolen, and (4) AT&T's knowledge of its security protocols and its assessment of whether those protocols were adequate to protect the type of data at issue (a process in which Snowflake was not involved).

By contrast, the claims against Snowflake will focus on Snowflake's obligations (if any) to AT&T consumers with which it was not in privity and had no contact, and its duties (if any) to ensure that AT&T—one of the most sophisticated companies in the world with robust security professionals, layered network security measures, and expansive cybersecurity practices— implemented appropriate security practices with respect to data into which Snowflake had only limited (if any) visibility.

Movants argue that centralization is justified here because the cases against Snowflake and its customers will involve the same expert testimony. Dkt. No. 2-1 at 5. Movants do not explain what these "same issues" are, and their bald assertion is incorrect. Expert issues in the cases against Snowflake will necessarily differ from expert issues in the cases against Snowflake's customers, like AT&T. For example, in the cases against Snowflake, one expert issue may be whether Snowflake should have implemented mandatory MFA for all customers, no matter the customer's business needs or the nature of the data the customer was managing in its Snowflake account (*e.g.*, even if the data in the customer's Snowflake account was not consumer, employee, or personal data, or even if the data was not sensitive). In the cases against the customers, by contrast, expert issues are much more likely to turn on the customer's unique circumstances and the type of data they were managing with Snowflake.

Movants also list 11 purported factual and legal similarities between the cases here. Dkt. No. 2-1 at 2-3. But Movants fail to recognize that the answers to the questions they pose (whether and to what extent Defendants owed a duty to consumers, whether Defendants adequately safeguarded consumer data, etc.) have different answers as to Snowflake and AT&T.

The factual and legal issues here are discrete and should be prosecuted against Snowflake separately. The first factor therefore weighs in favor of denying Movants' request for centralization.

**B.    The Requested Centralization Would Inconvenience the Parties and Witnesses**

The second factor—convenience of the parties and witnesses—also counsels against centralization of claims against Snowflake in an AT&T-centered MDL. Movants argue that "[c]onvenience for the parties, particularly as to the appearance of witnesses and the location of documents, will be enhanced in the Northern District of Georgia because AT&T Mobility, LLC

has its principal place of business in Georgia." Dkt. No. 2-1 at 4. But this is not true for Snowflake—Movants do not suggest that any relevant Snowflake witnesses or evidence are located in Georgia.

Moreover, most cases against Snowflake are already deemed related and assigned to the Chief Judge of the District of Montana, and the parties plan to move to consolidate them in a single proceeding. The Panel's "past decisions make clear that centralization under Section 1407 should be the last solution after considered review of all other options." *In re Comcast Corp.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) (internal quotation marks and citations omitted) (denying motion for centralization). Such alternatives "include transfer pursuant to 28 U.S.C. § 1404, as well as voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent pretrial rulings." *Id.*; *see also In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 38 F. Supp. 3d 1380, 1381 (J.P.M.L. 2014) (denying motion for centralization) ("[I]nformal cooperation among the involved attorneys is both practicable and preferable to centralization."). What makes most sense here is to continue what many of the parties have already started pursuing: separate single-defendant consolidated proceedings.

Movants' efforts to sweep cases against Snowflake into an AT&T-centric MDL will inconvenience the court system and parties by requiring Snowflake to litigate cases simultaneously in at least two jurisdictions: the AT&T-centric MDL, and the District of Montana, where the bulk of the cases against Snowflake are proceeding. The more convenient alternative would be to allow the parties to continue their efforts at self-organization. Because the claims against Snowflake are already largely centralized in the same district, there is "no reason to disrupt the parties' efforts at informal coordination." *In re Alteryx, Inc., Customer Data Sec. Breach Litig.*, 291 F. Supp. 3d

11    SNOWFLAKE'S OPPOSITION IN RESPONSE
          TO MOTION FOR TRANSFER

1377, 1378 (J.P.M.L. 2018). The parties plan to move to consolidate those cases, and Snowflake plans to sever claims against any co-defendants if necessary, and to transfer to the District of Montana (under 28 U.S.C. § 1404) the few remaining cases against Snowflake currently pending outside of the District of Montana. The parties should be allowed to continue to organize this litigation as an alternative to centralization under Section 1407.

C. **Creating an AT&T MDL that Includes Some But Not All Claims Against Snowflake Would be Extraordinarily Inefficient**

Centralization will not lead to more efficient pre-trial proceedings. On the contrary, it will expand and complicate what would otherwise be straightforward defendant-specific discovery. AT&T and Snowflake have their own unique factual issues and legal defenses related to both liability and damages. "Discovery regarding each individual defendant's conduct . . . will not overlap. Therefore, any efficiencies to be gained by centralization may be diminished by unique factual issues." *See in re Varsity Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1378 (J.P.M.L. 2023) (denying centralization).

Here, as mentioned above, discovery against AT&T will focus on the nature and content of the data that it chose to manage using Snowflake's software and whether it took appropriate measures to secure that data given its degree of sensitivity. By contrast, discovery of Snowflake (which has limited visibility into its customers' data and does not secure their access points for them) will focus on the specifics of its relationship and discussions with AT&T, security recommendations Snowflake made, and the security tools it made available to its customers (much of this information is publicly available). While the litigation against Snowflake is almost entirely pending in Montana, there are limited discovery efficiencies to be gained by centralizing an MDL

involving Snowflake and AT&T in Georgia. And any limited degree of discovery overlap can be efficiently addressed through coordinating and sharing of third-party discovery.

## II. IF THE PANEL CREATES AN AT&T MDL, IT SHOULD SEVER THE CLAIMS AGAINST SNOWFLAKE AND TRANSFER THEM TO THE DISTRICT OF MONTANA

As mentioned, most of the cases against Snowflake are already related before the same judge in the District of Montana. *See Bowers v. Snowflake*, No. 2:24-cv-00055-BMM, D. Mont. (2024) (Dkt. No. 10, Order Reassigning Cases). Thus, if the Panel decides that an AT&T MDL is appropriate, it should exercise its discretion to sever the claims against Snowflake in cases that name Snowflake as co-defendant with AT&T, and transfer them to Chief Judge Morris in the District of Montana. *See* 28 U.S.C. 1407(a) ("[T]he panel may separate any claim, cross-claim, counter-claim, or third-party claim . . .").

*In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345 (J.P.M.L. 2016) is instructive. There the plaintiffs asserted claims against numerous diabetes drug manufacturers. *Id.* at 1347. The Panel considered whether one MDL against all the manufacturers would promote efficiency, or whether the parties would be better served by centralizing claims against each defendant into their own defendant-specific MDL. *Id.* at 1347-48. Ultimately, the Panel was "not convinced that the MDL" should include claims involving *all defendants* and denied centralization because "[c]entralizing competing defendants in the same MDL may unnecessarily complicate case management, due to the need to protect trade secret and confidential information." *Id.* at 1348. Additionally, "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *Id.* Instead, the Panel ordered the claims against some defendants be "simultaneously separated and remanded to the Western District of Kentucky," while other actions

were transferred to the District of New Jersey for coordinated or consolidated pretrial proceedings. *Id.* at 1349.

The Panel's reasoning in *Invokana* squarely applies here. Centralizing actions against Snowflake and AT&T in the same MDL will not promote efficiency because separate discovery, motion tracks, and bellwether trials will be required regardless. Accordingly, if the Panel creates an AT&T MDL, Snowflake respectfully requests that the Panel sever the Snowflake claims and transfer them to Judge Morris in Montana.

## **CONCLUSION**

For the foregoing reasons, the motion to transfer should be denied.


DATED: August 19, 2024         QUINN EMANUEL URQUHART &
                               SULLIVAN, LLP


                               By  */s/ Stephen A. Broome*
                                   Stephen A. Broome
                                   Attorney for Snowflake

14    SNOWFLAKE'S OPPOSITION IN RESPONSE
                                              TO MOTION FOR TRANSFER